UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Todd Rettig, et al,            Case No. 3:18-cv-02894

           Plaintiffs,

     v.            MEMORANDUM OPINION
           AND ORDER

Henry County Board of Commissioners, et al,

           Defendants.

## I. INTRODUCTION

Before me are motions to dismiss filed by Defendants Campbell Soup Supply Company, LLC, (Doc. No. 12), and Henry County Board of Commissioners, (Doc. No. 13). Plaintiffs Todd Rettig, Paula Rettig, and Kyle Rettig filed a motion for leave to file a first amended complaint. (Doc. No. 20). Defendants filed motions in opposition to Plaintiffs' request, (Doc. Nos. 22 & 23), and Plaintiffs replied. (Doc. No. 24).

## II. BACKGROUND

Plaintiffs are the owners of real property located at the intersection of Industrial Drive and State Route 424, Henry County, Ohio 43545. (Doc. No. 21 at 2). Defendant Campbell Soup Supply Company has a facility located at 12773 OH-110, Napoleon, Ohio 43545.

On November 6, 2018, the Henry County Board of County Commissioners passed a resolution authorizing the use of Henry County's eminent domain power to acquire a portion of

Plaintiffs' land[1] to construct a bridge across the Maumee River. (Doc. No. 21-4). According to the resolution, the bridge would "improve the traffic flow, public safety, and aesthetic appearance in [the] area." *Id.*

Henry County then filed a petition for appropriation in the Henry County Court of Common Pleas on November 16, 2018 (Doc. No. 12-2 at 4). Plaintiffs filed an answer to the petition and a counterclaim requesting injunctive relief and asserting Henry County and Campbell Soup Supply Company conspired to use Henry County's eminent domain power to acquire Plaintiffs' property for the sole benefit of Campbell. (Doc. No. 12 at 13). Plaintiffs went on to file a notice of appeal of the resolution in the Henry County Court of Common Pleas. (*Id.*). On September 10, 2019, the state court denied Plaintiffs' request for injunctive relief, finding that because there was a public use for the bridge project, it did not violate the Fifth Amendment. (Doc. No. 25). On May 4, 2020, the Ohio Court of Appeals affirmed the trial court, finding there was no support in the record for the Plaintiffs claim that Campbell and the Henry County Board of Commissioners were engaged in a conspiracy to build a bridge solely for Campbell's benefit. *Board of Henry Cnty. Board of Comm'rs v. Rettig, et al*, No. 7-19-11, 2020 WL 2119384, *10 (Ohio Ct. App. 2020).

### III.  DISCUSSION

**A. Younger Abstention**

I begin with Henry County's argument that this court should abstain from exercising jurisdiction in this case pursuant to *Younger v. Harris*, 401 U.S. 37 (1971). "*Younger* abstention derives from a desire to prevent federal courts from interfering with the functions of state criminal prosecutions and to preserve equity and comity." *Doe v. University of Kentucky*, 860 F.3d 365, 368 (2017) (citing *Younger*, 401 U.S. at 44). While *Younger* abstention may apply to cases outside of the

---

[1] The specific portion of Plaintiffs' property at issue is described as: E. Riverview Avenue, Napoleon, Henry County, Ohio (Permanent Parcel NO. 28-070064.0000). (Doc. No. 21-4 at 2).

criminal context, "such applications are narrow and exist only in a few exceptional circumstances." *Doe*, 860 F.3d at 369 (citing *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 368 (1989)). The Sixth Circuit has identified three categories of cases where *Younger* abstention may be appropriate:

> [F]irst, *Younger* permits abstention when there is an ongoing state criminal prosecution. Next, *Younger* precludes federal involvement in certain civil enforcement proceedings. These are proceedings that are akin to criminal prosecutions. Finally, *Younger* pertains to civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions, such as contempt orders.

*Doe*, 860 F.3d at 369 (internal quotations and citations omitted). This case does not fall within any of these categories.

Henry County's petition for appropriation sought to gain possession of Plaintiffs' land, not charge Plaintiffs' with violating any criminal or civil code. Nor do the appropriation proceedings qualify as civil proceedings uniquely in furtherance of the state courts' ability to perform their judicial functions. Unlike a contempt order, through which a state "vindicates the regular operation of its judicial system," *Juidice v Vail*, 430 U.S. 327, 335 (1977), appropriation proceedings do not uniquely further state judicial systems. And while the state has an interest in the outcome of appropriation proceedings, it is not the type of interest sufficient to justify abstention under *Younger*. *See New Orleans Pub. Serv., Inc.*, 491 U.S. at 368 ("[I]t has never been suggested that *Younger* requires abstention in deference to a state judicial proceeding reviewing legislative or executive action.")

Because Henry County fails to demonstrate how the present litigation falls into any of the categories where *Younger* abstention may be appropriate, this court will exercise jurisdiction over Plaintiffs' claims.

### B. Plaintiffs' Motion for Leave to Amend the Complaint

On April 26, 2019, Plaintiffs sought leave to amend their complaint, (Doc. No. 20), and attempted to file their first amended complaint, (Doc. No. 21), with the court. Plaintiffs advance

3

two arguments in support of their motion: First, Plaintiffs are entitled to amend as a matter of course pursuant to Fed. R. Civ. P. 15(a)(1)(B); Second, even if Rule 15(a)(1)(B) is not applicable, Plaintiffs should be granted leave to amend under Rule 15(a)(2).

1. **Rule 15(a)(1)(B) Analysis**

A party may amend its pleadings as a matter of course "if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1)(B). On February 25, 2019, both Henry County and Campbell filed motions to dismiss the Plaintiffs' complaint and served those motions on Plaintiffs that same day. (Doc. Nos. 12 & 13). Because these are motions under Rule 12(b), Plaintiffs would have been able to amend as a matter of course within 21 days of their filings. Plaintiffs did not do so.

Plaintiffs now argue that the Court's April 11, 2019 order, (Doc. No. 19), which gave Plaintiffs until April 26, 2019, to respond to the defendants motions to dismiss, extended the time within which Plaintiffs could invoke Rule 15(a)(1) to amend their complaint as a matter of course. Plaintiffs' argument is not well-taken. In granting Plaintiffs an extension of time, I did not make any finding as to whether it would be appropriate to extend Plaintiffs' deadline for amending the complaint beyond the time allowed by Rule 15(a)(1). Instead, I issued Plaintiffs' proposed order granting them leave to respond to the Defendants' motions. While Plaintiffs' response could certainly include a *motion* to amend, I did not open the door for Plaintiff's to file an amended complaint without making the showing required by Rule 15(a)(2).

I agree with my colleagues who have found that an order extending the amount of time a party has to respond to a motion to dismiss does not affect the time permitted by Rule 15(a)(1) to amend a complaint as a matter of course. *See, e.g., Webb v. Republic Bank & Trust Co.*, 2012 WL 2254205, at *2 (W.D. Ky. June 15, 2012) (collecting cases).

### 2. Rule 15(a)(2) Analysis

Pursuant to Rule 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Rule 15 sets forth a liberal policy of permitting amendments. *Springs v. U.S. Dept. of Treasury*, 567 F. App'x. 438, 443 (6th Cir. 2014). But a motion for leave to amend may be denied when: it is the product of undue delay, bad faith, or dilatory motive; there would be unfair prejudice to the opposing party; or amendment of the complaint would be futile. *Id.*

"A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010) (quoting *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000)). Thus, whether Plaintiffs should be granted leave to amend turns on whether their amended complaint can survive the attacks Defendants raise in their respective motions to dismiss. Accordingly, the analysis below examines the arguments that Defendants raised in their motions to dismiss while taking account of the additional facts Plaintiffs included in their proposed amended complaint.

### C. Amendment Futility & Defendants' Motions to Dismiss

In ruling on a motion to dismiss under Rule 12(b)(6), "[c]ourts must construe the complaint in the light most favorable to [the] plaintiff." *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010) (citation omitted). To survive a motion to dismiss under Rule 12(b)(6), "even though a complaint need not contain 'detailed' factual allegations, its 'factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true.'" *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

5

Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice. *Twombly*, 550 U.S. at 555 (stating that the complaint must contain something more than "a formulaic recitation of the elements of a cause of action"). A complaint must state sufficient facts which, when accepted as true, state a claim "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully" and requires the complaint to allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct).

"[A] court may consider exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein." *Stein v HHGREGG Inc.*, 873 F.3d 523, 528 (6th Cir. 2017). If such an exhibit contradicts allegations in the complaint, the exhibit prevails over the complaint. *Cates v. Crystal Clear Techs., LLC*, 874 F.3d 530, 536 (6th Cir. 2017).

1. **Subject Matter Jurisdiction**

I begin with Henry County's argument that amendment would be futile because the court would lack subject matter jurisdiction over Plaintiffs' claims for two reasons: (1) Plaintiffs do not allege a federal cause of action in their complaint; and (2) Plaintiffs' claims are not ripe.

First, Henry County is wrong about whether the Plaintiffs have alleged a federal cause of action in their amended complaint. Although Plaintiffs' original complaint only contained references to violations of Ohio law, Plaintiffs' proposed amended complaint alleges that Defendants' actions "violate the Plaintiffs' rights under the Fifth and Fourteenth Amendments to the United States Constitution and give rise to the causes of action pursuant to 42 U.S.C. § 1983." (Doc. No. 21 at 2).

Second, the ripeness rule that Henry County relies on has since been overruled by the Supreme Court. In *Knick v. Twp. Of Scott, Pennsylvania*, --- U.S. ---, 139 S. Ct. 2162 (2019), the United States Supreme Court overruled *Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985), and in doing so, abolished the rule that property owners must seek just compensation in state court before bringing a federal takings claim under § 1983. The Court explained the Fifth Amendment right to just compensation occurs at the moment of the taking, regardless of whether remedies are subsequently made available to the property owner. *Knick*, 139 S. Ct. at 2172-73.

Because these are the only two arguments Henry County raised in their motions to dismiss, nothing in Henry County's motion entitles them to dismissal of Plaintiffs' claims, nor to the denial of Plaintiffs' request for leave to amend. I turn now to arguments Campbell raised in their motion to dismiss to determine if Plaintiffs' proposed amendment would be futile.

### 2. Conspiracy Claims

Plaintiffs bring claims for a civil conspiracy in violation of § 1983 against both Henry County and Campbell.[2] To state a claim for civil conspiracy under § 1983, a plaintiff must show a deprivation of an underlying constitutional right. *Bartlett v. Washington*, 793 F. App'x 403, 408 (6th Cir. 2019). This brings into focus the crux of the parties' dispute: whether Plaintiffs have included sufficient facts to state a claim that Henry County took their property in violation of the Fifth Amendment.

The Fifth Amendment provides, in relevant part, "nor shall private property be taken for public use, without just compensation." U.S. Const. amend. V. While "[a] purely private taking

---

[2] Although Plaintiffs do not make it entirely clear whether their conspiracy claims are based on state or federal law, I treat them as claims for a conspiracy in violation of § 1983 because both Plaintiffs' original complaint, (Doc. No. 1), and Plaintiffs' proposed amended complaint, (Doc. No. 21), in describing the "nature of the action," alleged Defendants conduct gave rise to causes of action pursuant to 42 U.S.C. § 1983. (Doc. No. 1 at 3; Doc No. 21 at 2).

7

could not withstand the scrutiny of the public use requirement," *Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 245 (1984), a taking done for a "public purpose" satisfies the public use requirement, even if the property is not open to use by the public. *Kelo v. City of New London, Conn.*, 545 U.S. 469, 480 (2005).

The Supreme Court has explained, "our cases have defined [the] concept [of public purpose] broadly, reflecting our longstanding policy of deference to legislative judgments in this field." *Id.* A taking will satisfy the public use clause as long as it is "rationally related to a conceivable public purpose." *Midkiff*, 467 U.S. at 241 (collecting cases). Thus, although there is a role for courts to play in reviewing whether the legislature's purpose constitutes a public use, it is an "extremely narrow" one. *Midkiff*, 467 U.S. at 240 (quoting *Berman v. Parker*, 348 U.S. 26, 32 (1954)).

Campbell argues the bridge serves public purposes in many ways, most notably by connecting two public roads and being open for use by the public. (Doc. No. 12-1 at 15-17). Plaintiffs do not dispute that the bridge will be open to the public for use, and a taking for this purpose would clearly satisfy the public use clause. *See Kelo*, 545 U.S. at 478-79.

Campbell further claims the bridge will serve other public purposes beyond use for transportation, including generating public safety benefits as less traffic travels through downtown Napoleon, decreasing commuting times, and improving the local economy by providing greater access to the industrial area in Napoleon. (Doc. No. 12-1 at 15-17). Because each of these other goals is rationally related to a public purpose, taking private property to serve these goals would satisfy the public use clause as well. Thus, even taking the facts as Plaintiffs allege them to be in their complaint, there can be no dispute the bridge project would serve public purposes consistent with the public use clause.

But in their proposed amended complaint, Plaintiffs bring a slightly distinct challenge under the public use clause, arguing that the taking is unlawful because Henry County was not motivated

8

by any of the public purposes they identify. (Doc. No. 21 at 8). Plaintiffs' challenge relies on a portion of *Kelo* where the Court acknowledged the Fifth Amendment prohibits taking property "under the mere pretext of a public purpose." *Kelo*, 545 U.S. at 477-78. Plaintiffs claim Henry County's sole motivation for constructing a bridge at the chosen location was to confer a benefit on Campbell.

Although courts have recognized a pretext claim like the one Plaintiffs' attempt to bring here, a plaintiff bringing these claims must plead specific facts—justifying the inference that the governmental entity acted with an impermissible intent—to survive a motion to dismiss. *Compare Goldstein v. Pataki*, 516 F.3d 50, 62 (2d Cir. 2008) (rejecting a pretext claim "founded only on mere suspicion") *with Franco v. National Capital Revitalization Corp.*, 930 A.2d 160, 169 (D.C.App. 2007) (finding landowner pled facts sufficient to support affirmative defense of pretext). The question is whether Plaintiffs sufficiently allege facts which support a plausible inference that Henry County acted with impermissible intentions.

Plaintiffs allege the following to show Henry County's sole motivation for the bridge project was to confer a benefit on Campbell: (1) the bridge will create what Plaintiffs claim is a driveway for the Campbell factory in Napoleon; (2) Plaintiffs' property was marked as the site of a future bridge in the City of Napoleon's master plan as long ago as 2003, prior to the Henry County defendants preparing any studies, reports, or data to support the location of the bridge project; (3) Henry County Commissioners made multiple presentations to Campbell regarding the bridge project and offered to name the new roadway and bridge after Campbell in exchange for Campbell's support; (4) Campbell has committed to provide at least $400,000 in funds to the bridge project; (5) Henry County and Campbell have entered into a public-private partnership to construct the bridge; (6) Campbell, which employs approximately 1,500 people in the area, is the largest employer in Henry County; (7) Commissioner Hasterdt testified the loss of Campbell's presence in Henry County

9

would have a negative effect on the local economy; and (8) three other bridges that cross the Maumee River in Henry County have been renovated in the last twelve years. (Doc. No. 21 at 4-8).

Some of Plaintiffs' allegations are contradicted by the exhibits attached to their complaint. For example, Plaintiffs' contention that the bridge will create a driveway for the Campbell factory is demonstrably false. The bridge would link two public roads, State Route 110 and Industrial Drive. (Doc. No. 21-1 at 4; Doc. No. 21-4 at 2). Plaintiffs' allegation that their property was targeted as the site of the bridge project prior to any studies to justify the necessity of it is also not supported by the complaint and accompanying exhibits. Even if I assume the 2003 designation marked the beginning of a decades-long conspiracy to deprive Plaintiffs of their land, Henry County hiring an engineering firm prior to finalizing the bridge project's location demonstrates it considered the effects the project would have on the public.[3]

At most, the prior designation might show that Henry County previously considered building a bridge in a location advantageous to Campbell prior to conducting any studies to confirm the location was appropriate, but even if that were true, the fact that Henry County eventually conducted those studies is evidence that it considered public purposes before taking Plaintiffs' property.

For example, Plaintiffs allege Henry County was motivated by a desire to prevent Campbell from reducing its economic presence in the community. (Doc. No. 21 at 5). But even if it were true

---

[3] In their proposed amended complaint, Plaintiffs allege Henry County retained engineers "to, *ostensibly*, assess the potential advantages and disadvantages/damages to the community and the abnormalities in Defendants' plans." (Doc. No. 21 at 4) (emphasis added). If Plaintiffs mean to imply that Henry County retaining engineers to study the project was itself pretextual, that allegation, without "further factual enhancement," *see Twombly*, 550 U.S. at 557, is little more than a conclusory allegation that Defendants violated the law. For example, Plaintiffs do not allege facts to explain why Henry County would wait more than five years to implement a plan it allegedly concocted as early as 2003. Without more specific allegations to support a theory that Henry County retaining an engineering group was part of a sham effort, I cannot find Plaintiffs have "state[d] a claim to relief that is plausible on its face." *See Twombly*, 550 U.S. at 570.

10

this was Henry County's only consideration, it would still qualify as a public purpose. *See Kelo*, 545 U.S. at 485 ("Clearly there is no basis for exempting economic development from our traditionally broad understanding of public purpose."). For this same reason, the allegations concerning Campbell's role in the local economy—the fact that it is the largest employer, and Hasterdt's testimony that losing Campbell's presence would have a negative effect on the local economy—do not support Plaintiffs' efforts to state a claim against Defendants.

I turn now to Plaintiffs' allegations concerning Henry County's presentations to Campbell, and Campbell's eventual pledge to contribute money to the project. Plaintiffs attached to their complaint what they allege is one of multiple presentations Henry County made to Campbell, (Doc. No. 21-1), but the presentation itself contradicts many of Plaintiffs' allegations in the complaint.

For example, the presentation indicates Henry County did not approach Campbell until the project was "very close to a shovel ready phase" and needed to overcome a funding gap. (Doc. No. 21-1 at 3). It also indicates Henry County attempted to overcome part of this funding gap by requesting $470,000 from Campbell, in exchange for, among other things, certain naming rights to both the bridge and Industrial Drive. (*Id.* at 9-10). That Henry County sought to convince Campbell to fund the project demonstrates Henry County intended to realize some benefits beyond those Campbell might. It would make little sense to request funding from Campbell if the sole purpose of the project was to aid Campbell. While Campbell stood to gain from the arrangement as well, this is irrelevant to the analysis under the public use clause. *See Kelo*, 545 U.S. at 485 ("[T]he government's pursuit of a public purpose will often benefit individual private parties."). Campbell's eventual pledge of at least $400,000 is similarly unpersuasive because it sheds no light on Henry County's intentions for the project in the first place.

Finally, that three other bridges in the county have been renovated in the last twelve years provides no material support for Plaintiffs' claims. The existence of these other bridges does

11

nothing to undermine the Henry County Commissioner's belief that an additional bridge would further alleviate traffic concerns in downtown Napoleon. In fact, Commissioner Hasterdt's deposition, which Plaintiffs attach to their proposed amended complaint, makes clear one of the purposes of the proposed bridge was to redirect traffic from one of these other bridges.

In sum, even if the allegations in the proposed amended complaint are taken into consideration, Plaintiffs have failed to show the underlying constitutional deprivation required for a § 1983 conspiracy claim. In other words, Plaintiffs' proposed amended complaint could not survive Campbell's motion to dismiss, leave to amend would be futile and therefore inappropriate as to Plaintiffs' claims against Campbell. This renders amendment futile and granting leave to amend inappropriate as to Plaintiffs' claims against Campbell.

Plaintiffs' motion for leave to amend its complaint is denied with prejudice as to its claims against Campbell. Campbell is also entitled to dismissal of Plaintiffs' claims against it.[4] Because Henry County did not move to dismiss Plaintiffs' complaint for failure to state a claim, I cannot grant Henry County the same relief. *See Morrison v. Tomano*, 755 F.2d 515, 517 (6th Cir. 1985) (explaining district court should not dismiss complaint sua sponte without giving plaintiff a chance to amend the complaint or respond to notice of impending dismissal). Instead, I will hold in abeyance the portion of Plaintiffs' motion for leave to amend its complaint seeking to amend its claims against Henry County. Plaintiffs must show cause why dismissal of its claims against Henry County is not appropriate.

**D. Sanctions**

Henry County's motion to dismiss included a section asserting that Plaintiffs' complaint violated Rule 11 of the Federal Rules of Civil Procedure. (Doc. No. 13 at 9). I disagree. Contrary

---

[4] In their original complaint, Plaintiffs also included a claim for unjust enrichment against Campbell. Plaintiffs omitted this claim when filing their proposed amended complaint so I will deem it waived.

to Henry County's contention, Plaintiffs' complaint does include factual allegations sufficient to invoke federal subject matter jurisdiction, because Plaintiffs allege claims for the violation for their constitutional rights, made actionable under § 1983. Accordingly, I find sanctions are not appropriate.

### IV. CONCLUSION

Plaintiffs' motion for leave to file an amended complaint, (Doc. No. 20), is denied as to Plaintiffs' claims against Campbell. The motion is held in abeyance as to Plaintiffs' claims against Henry County. Campbell's motions to dismiss, (Doc. No. 12), is granted. Henry County's motion to dismiss, (Doc. No. 13), is denied. Plaintiffs shall show cause within 30 days of the date of this opinion why its claims against Henry County should not be dismissed.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge